FILED
2019 Mar-22  PM 03:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **JOHN SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **PEOPLES PIGGLY WIGGLY, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

## I.    INTRODUCTION

Plaintiff, John Smith (hereinafter, "Plaintiff"), files this Title III, Americans with Disabilities Act (hereinafter, "ADA") action, pursuant to 42 U.S.C. §12181, *et seq.* In Count One of the Complaint, Plaintiff seeks to enjoin Peoples Piggly Wiggly, LLC dba Piggly Wiggly (hereinafter, "Defendant" or "Piggly Wiggly") to remove architectural barriers. In Count Two of the Complaint, Plaintiff seeks to enjoin Defendant's use of the facility to provide full and equal enjoyment of the Piggly Wiggly environment to the disabled. In Count Three of the Complaint, Plaintiff seeks to enjoin Defendant from retaliation and coercion based on Plaintiff's exercise or enjoyment of, or on account of Plaintiff's having exercised or enjoyed, or on account of Plaintiff's counsel having aided Plaintiff in the exercise or enjoyment of any right granted or protected by the ADA or 28 C.F.R. §36.206.

## JURISDICTION, PARTIES, AND ARTICLE III STANDING

1. This action is for declaratory and injunctive relief pursuant to Title III of the ADA, 42 U.S.C. §12181, *et seq.* and implementing regulations; therefore, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2. Venue is proper in this Court, the United States District Court for the Northern District of Alabama, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Northern District of Alabama.

3. Plaintiff was diagnosed with diabetes approximately forty-one years ago. Plaintiff had a double amputation, losing both legs, as a result of the diabetes. The extent of Plaintiff's physical impairments limits Plaintiff's ability to care for himself, perform manual tasks, walk, stand, lift, bend, and work, all of which are major life activities pursuant to 42 U.S.C. §12102(2)(A). Therefore, Plaintiff is disabled pursuant to the ADA, in that Plaintiff suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. §12102; *see also*, 28. C.F.R. §36.104.

4. Defendant is a limited liability company that is both registered to conduct business and is conducting business within the State of Alabama sufficient to create both general and specific *in personam* jurisdiction. Upon

information and belief, Defendant owns and operates the real property and improvements located at 8075 US 72, Cherokee, Alabama 35616. Defendant's facility is a place of public accommodation pursuant to 42 U.S.C. §12181(7).

5. All events giving rise to this lawsuit occurred in the Northern District of Alabama and Defendant is a citizen thereof.

6. Plaintiff is a resident of Muscle Shoals.   Both Mr Smith's brother and sister each live within three miles of the Piggly Wiggly store. Mr. Smith visits his family a few times each month, which takes him both past and near the store.  On these visits, Mr. Smith sometimes shops at the Piggly Wiggly and he has been to the store many, many times over the years. Plaintiff intends to continue visiting Defendant's grocery store, because Plaintiff enjoys the goods and services offered by Defendant's grocery store. Plaintiff will return not only for goods and services at Defendant's grocery store, but also, to confirm compliance with the ADA by Defendant. Plaintiff does not know exactly when Plaintiff will return to Defendant's grocery store because Plaintiff has not planned every trip for the rest of Plaintiff's life. Moreover, such specific planning is not necessary to invoke the ADA. *See, e.g., Parr v. L&L Drive Inn Restaurant*, 96 F. Supp.2d 1065, 1079 (D. Haw. 2000); *Segal v. Rickey's Restaurant*

*and Lounge, Inc.*, No. 11-61766-cn (S.D. Fla. 2012) ("Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment."). Nevertheless, Plaintiff definitely intends to return to Defendant's grocery store and his trips to visit his brother and sister take him in the vicinity of the store.

7. Plaintiff has been denied full and equal enjoyment of Defendant's facility on the basis of Plaintiff's disabilities because of the barriers described below in paragraph twenty (20) and throughout the Complaint.

8. Plaintiff has Article III standing to pursue this case because of the following: (1) Plaintiff is disabled, pursuant to the statutory and regulatory definition, (2) Defendant's grocery store is a place of public accommodation, pursuant to the statutory and regulatory definition, (3) Plaintiff has suffered a concrete and particularized injury by being denied access to the facility by architectural barriers, and by Defendant's denial of the use of Piggly Wiggly for Plaintiff's full and equal enjoyment, as described throughout the Complaint, and (4) because of these injuries, there exists a genuine threat of imminent future injury, as described in paragraph eighteen (18) below.

## II.    PLAINTIFF'S CLAIMS

**ADA, Title III**

9. Congress enacted Title III of the ADA, 42 U.S.C. §12181 *et seq.* on or about July 26, 1990. Commercial enterprises were provided one and a half years from enactment of the statute to implement the requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508 (A); *see also*, §36.304).

10. Pursuant to 42 U.S.C. §12181(7) and 28 C.F.R. §36.104, Defendant's facility is a place of public accommodation in that the facility is a grocery store providing goods and services to the public. Therefore, the facility is covered by the ADA and must comply with the ADA.

**COUNT ONE**
**VIOLATION OF THE ADA, TITLE III**
**42 U.S.C. §12182(b)(2)(A)(iv)**
***(Architectural Barriers)***

**Defendant's Existing Facility is Subject to the 2010 ADA Design Standards for the Portions of the Facility Addressed in this Complaint**

11. Plaintiff is informed and believes based on publicly available information that the building in which Piggly Wiggly is located at 8075 US 72, Cherokee, Alabama 35616 was first constructed in 1993.

12. Plaintiff is further informed and believes based on publicly available information that the establishment in which Piggly Wiggly is located at

8075 US 72, Cherokee, Alabama 35816 underwent alterations and/or improvements to the establishment after 2018.

**13.** The ADA was enacted requiring facilities constructed prior to January 26, 1992, be considered existing facilities, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All alterations made to existing facilities after January 26, 1992, and all new construction after January 26, 1993, must be readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs. 42 U.S.C. § 12183(a), (b); 28 C.F.R. § 36.402. "Readily accessible to and usable by . . ." is the new construction standard, which requires compliance with the Department of Justice (hereinafter, "DOJ") standards. 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the new construction standards is if the design and construction of the building to be readily accessible and usable is structurally impracticable. 42 U.S.C. § 12183(a)(1). The structural impracticability defense applies only in rare circumstances of extraordinary terrain. 28 C.F.R. § 36.401(c). "Readily accessible to and usable by . . ." is also the alterations standard. 42 U.S.C. § 12183(a)(2). Alterations must be made to the maximum extent feasible.  42 U.S.C.  §

12183(a)(2); 28 C.F.R. § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 C.F.R. § 36.402(b).

**14.** New construction and alterations must comply with either the DOJ's 1991 Standards for Accessible Design or the 2010 Standards for Accessible Design. 28 C.F.R. § 36.406 establishes whether the 1991 Standards for Accessible Design or the 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 C.F.R. § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a state, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 C.F.R. § 36.406(a)(2). New construction and

alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a state, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable. *See*, 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

**15.** The 2010 Standards for Accessible Design are applicable for the architectural barriers at issue in this case.

## Plaintiff's Concrete and Particularized Standing to Pursue an Injunction

**16.** Defendant has discriminated and continues to discriminate against Plaintiff and others similarly situated by denying full and equal access to and full and equal enjoyment of goods, services, facilities, privileges, advantages, and/or accommodations at Piggly Wiggly in derogation of 42 U.S.C. §12101 *et seq.* and as prohibited by 42 U.S.C. §12182 *et seq.* As new construction, the building must be readily accessible to and usable by

individuals with disabilities. 42 U.S.C. § 12183(a), (b). Defendant's failure to remove the existing barriers violates 42 U.S.C. §12182(b)(2)(A)(iv), which requires removal of architectural barriers.

17. As described above, prior to filing this lawsuit, Plaintiff was denied full and equal and safe access to all of the benefits, accommodations, and services offered to individuals without disabilities within and about Defendant's facility. Plaintiff's access was inhibited by each of the described architectural barriers detailed in this Complaint, which remain at the facility in violation of the ADA. Therefore, Plaintiff has suffered an injury-in-fact in precisely the manner and form the ADA was enacted to guard against.

18. Plaintiff has definite plans to return to Piggly Wiggly in the future, as described in paragraph six (6) above. Plaintiff will return to Piggly Wiggly within the next few weeks, not only to enjoy the goods and services at Piggly Wiggly but also to see if Defendant has repaired the barriers. Plaintiff will continue to do so even when Piggly Wiggly is repaired, because Piggly Wiggly is a useful store given its location. Plaintiff would not want to stop going when Piggly Wiggly is repaired; that is all the more reason to go. The barriers are not just created by construction issues; instead, many of them are created by human activity, from the way

Defendant's workers at the establishment use the physical architectural elements of the facility. The barriers created by human activity will need to be reviewed and maintained forever, to be sure Defendant's management and workers continuously act in a manner that does not create barriers. Mr. Smith also wants to see if Piggly Wiggly will take personal responsibility for its actions and act better through its employees in the store than it has so far when he has contacted the store about having problems.  Absent remedial action by Defendant, Plaintiff will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein, and as a result, be discriminated against by Defendant on the basis of Plaintiff's disabilities. The Eleventh Circuit held in *Houston v. Marod Supermarkets*, 733 F.3d 1323 (11th Cir. 2013), when architectural barriers have not been remedied ". . . there is a 100% likelihood that plaintiff . . . will suffer the alleged injury again when plaintiff returns to the store." Due to the definiteness of Plaintiff's plans to continue visiting the subject facility, there exists a genuine threat of imminent future injury. Plaintiff's stated intent to return to the facility is plausible.

**Architectural Barriers**

19. Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the DOJ, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

20. Plaintiff has been from the parking lot to the entrance; from the entrance to the counters; the counters themselves; from the entrance to the restroom; the restrooms themselves; throughout circulation paths and accessible routes, and service paths, paths of travel, and in particular to, but not limited to, all of which are more specifically described below. Moreover, Defendant's facility located at 8075 US 72, Cherokee, Alabama 35616 violates the ADA in the parking lot, restrooms, routes, and in particular, but not limited to:

   A. Piggly Wiggly fails to have accessibility signage, including van accessibility signage, identifying that the accessible parking spaces are accessible with the International Symbol of Accessibility that is mounted 60 inches minimum above the finish floor or ground surface measured to the bottom of the sign;

   B. There are mats throughout the facility that are not stable, firm, or otherwise secured to the floor;

**C.** Defendant maintains a plethora of items in the clear floor space on the route to the toilet room, which has the discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to maneuver independently into and throughout the hallway to get to the toilet room;

**D.** Defendant maintains a plethora of items in the clear floor space at the doorway to the toilet rooms, which prevents disabled individuals from being able to maneuver to the toilet room doors.

**E.** The items obstructing the hallway at the toilet rooms prohibit individuals with disabilities from entering and existing the toilet rooms;

**F.** The signage displaying the International Symbol of Accessibility identifying the interior space within the restroom area as ADA accessible fails to be located alongside the door at the latch side;

**G.** The toilet room door operating hardware fails to be maintained in conformance with the ADA Standards for Accessible Design so that the hardware does not require tight grasping, twisting, or pinching of the wrist;

**H.** The toilet room door does not provide the required 18 inches of maneuvering clearance when opening the door to maneuver inside;

**I.** The toilet room door locking mechanism fails to be maintained in conformance with the ADA Standards for Accessible Design so that the toilet room door locking mechanism does not require tight grasping, twisting, or pinching of the wrist;

**J.** The lavatory sink faucet operating mechanism fails to be maintained in conformance with the ADA Standards for Accessible Design so that the lavatory sink faucet operating mechanism does not require tight grasping, twisting, or pinching of the wrist;

**K.** The lavatory sink does not provide the required knee and toe clearance for a forward approach;

**L.** The paper towel dispenser requires tight grasping, pinching, and twisting of the wrist;

**M.** The paper towel dispenser exceeds the required height;

**N.** There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom of the reflecting surface of the mirror measures a maximum of 40 inches above the finished floor.

**O.** The clear floor space around the water closet fails to be maintained in conformance with the ADA Standards for Accessible Design so that the lavatory sink and other associated obstructions are not restricting the water closets usability by disabled individuals;

**P.** The centerline of the water closet exceeds the required distance from the sidewall;

**Q.** The water closet does not measure the required height;

**R.** The restroom measurements do not allow for a forward or parallel approach to the water closet to be able to sit on the water closet;

**S.** The toilet paper dispenser fails to be properly maintained in conformance with the ADA Standards for Accessible Design so that the dispenser is located 7-9 inches from the front of the water closet;

**T.** There is no rear wall grab bar at the water closet;

**U.** There is no side wall grab bar at the water closet;

**V.** The restroom does not meet the minimum required size;

**W.** The flush control valve fails to be properly located on the transfer side of the water closet; and

**X.** Defendant fails to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities.

21. To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

**22.** Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have Plaintiff's reasonable attorneys' fees, costs and expenses paid by Defendant pursuant to 42 U.S.C. §12205.

**23.** Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an Order to alter the discriminating facility to make it readily accessible to, and usable by, individuals with disabilities to the extent required by the ADA, and closing the facility until the requisite modifications are completed, and to further order Defendant to modify its policies, practices, and procedures, to provide equal use of its facilities, services and benefits to disabled individuals.

## COUNT TWO
## VIOLATION OF THE ADA
### *(Denial of Full and Equal Enjoyment)*

**24.** Plaintiff re-alleges paragraphs 1-23 above.

**25.** 42 U.S.C. §12182(a) provides:

> *No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.*

26. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. §12101(a)(2).

27. Congress also found that: ". . . individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities", 42 U.S.C. §12101(a)(5); "the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals", 42 U.S.C. § 12101(a)(7). Congress found that: ". . . the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous and costs the United States billions of dollars in unnecessary

expenses resulting from dependency and nonproductivity." 42 U.S.C. §12101(a)(8).

28. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide ". . . a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1), (2).

29. The ADA provides, *inter alia*, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

30. The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability . . . with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

31. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination,

17

including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendant's acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, *et seq*., and the regulations promulgated thereunder.

32. To address this broad range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); *see also*, H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable;

this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

**33.** For that reason, the ADA applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

**34.** The keystone for this analysis is Defendant must start by considering how its facility is used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience. *Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L.Ed.2d 97 (2005); *see also*, *Baughman v. Walt Disney World Company*, 685 F.3d 1131, 1135 (9th Cir. 2012).

**35.** Plaintiff was denied full and equal access to Piggly Wiggly. Plaintiff specifically and definitely wants to return to Defendant's grocery store. More specifically, Plaintiff wants to be afforded the same level of service that is offered to non-disabled individuals and which Defendant has failed to provide to Plaintiff as follows: Defendant failed to provide an accessible

parking area and accessible route, which means Plaintiff cannot park or

determine if there is a usable parking space and then independently travel

from the parking area to the grocery store; Defendant failed to provide an

accessible toilet room for disabled individuals, which means that, unlike

the able-bodied, the disabled are challenged or denied the opportunity to

independently use the toilet room, clean up after using the toilet room,

maneuver throughout the toilet room, and are prohibited from using all

other elements of the toilet room. Defendant's continued failure to

maintain ADA accessibility as an integral part of the highest possible

experience that non-disabled individuals get to independently enjoy has

segregated or otherwise treated Plaintiff and others similarly situated

differently, in that, Piggly Wiggly makes Plaintiff dependent on family or

an independent third party, which is not the same experience that Piggly

Wiggly affords to non-disabled individuals. The foregoing failures by

Defendant prohibited Plaintiff from having the same experience that non-

disabled individuals have when at Piggly Wiggly.

36. In its Preamble to Title III regulation, the DOJ recognized that mobility

impaired persons including persons in wheelchairs should have the same

opportunities to enjoy the goods and services and other similar events of

public accommodation with their families and friends, just as other non-

disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, §36.203.

37. The ADA specifically makes it unlawful to provide individuals with disabilities with an unequal benefit and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii), (iii); 28 C.F.R. § 36.202(b), (c). Further, 28 C.F.R. §302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided inferior seating and segregated accommodations compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." *See*, 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

38. Defendant's use of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendant has segregated

and separated disabled individuals from non-disabled individuals. "The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected." *H.R. Rep. No. 101-485(III),* at 50, *1990 U.S.C.C.A.N* at 473. The ADA provides a broad mandate to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream of American life." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001) (quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332).

39. Defendant discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Piggly Wiggly.

40. Defendant's conduct and Defendant's unequal treatment to Plaintiff constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendant will continue to treat Plaintiff and others similarly situated unequally.

**41.** Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitutes continuous discrimination and absent a Court ordered injunction, Defendant will continue to not maintain the required accessible features at Defendant's facility. 28 C.F.R.§ 36.211(a).

**42.** Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have Plaintiff's reasonable attorneys' fees, costs, and expenses paid by Defendant pursuant to 42 U.S.C. § 12205.

**43.** Pursuant to 42 U.S.C. §12188, this Court is authorized to enjoin these illegal acts of Defendant.

### COUNT THREE
### VIOLATION OF THE ADA
#### *(Retaliation or coercion)*

**44.** Plaintiff re-alleges paragraphs 1-43 above.

**45.** 28 C.F.R. §36.206 provides the following:

**(a)** No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.

**(b)** No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the

exercise or enjoyment of, any right granted or protected by the Act or this part.

(c) Illustrations of conduct prohibited by this section include, but are not limited to:

    (1) Coercing an individual to deny or limit the benefits, services, or advantages to which he or she is entitled under the Act or this part;

    (2) Threatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation;

    (3) Intimidating or threatening any person because that person is assisting or encouraging an individual or group entitled to claim the rights granted or protected by the Act or this part to exercise those rights; or

    (4) Retaliating against any person because that person has participated in any investigation or action to enforce the Act or this part.

46. Plaintiff sent a pre-suit notice letter to Defendant on February 27, 2019, which is not required in ADA, Title III discrimination cases in an effort to amicably resolve without the need to file litigation. *Association of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006).

47. Plaintiff's counsel was contacted by email on March 6, 2019 by Defendant's counsel. The letter accused Plaintiff and perhaps Plaintiff's counsel of using a pseudonym in place of Plaintiff's name, among other

derogatory accusations, and included threats against Plaintiff and his counsel such as the below:

> If you cannot produce a legitimate plaintiff with a legitimate claim within forty-eight (48) hours then I will turn this matter over to the Alabama State Bar Association and I will file suit against you personally along with The ADA Group, LLC in the Circuit Court of Colbert County for Fraud, Intentional Infliction of Emotional Distress, Wantonness, and Private Nuisance.

48. Plaintiff's counsel sent a response email on March 6, 2019 explaining to Defendant's counsel the pre-suit notice letter was sent in a good faith attempt to resolve this matter without needing to file litigation and explaining Plaintiff's counsel would be sending Defendant's counsel an explanation of violations detailing the barriers Plaintiff encountered.

49. Defendant's counsel then responded on March 6, 2019 continuing with derogatory language saying, "[i]f you want me to play ball on this scam . . ." and requesting more evidence than the explanation of violations and again threatening Plaintiff and Plaintiff's counsel stating ". . . If I don't have something tangible by Friday then I will file suit in Circuit Court."

50. Plaintiff's counsel's response on March 7, 2019 quoted 28 C.F.R. §36.206, offered to allow Defendant's counsel the opportunity to withdraw the threats of retaliation, explaining that otherwise Plaintiff would be including the threats in the present lawsuit, and asking Defendant's counsel

if Defendant's counsel will be accepting service of process on behalf of Defendant.

51. Defendant's counsel responded again on March 7, 2019 and continued by stating, "The suit that I will be filing in Circuit Court will be for fraud . . . I will accept service when you file your suit in Federal Court and I will immediately file a counter-claim for conspiracy to commit tortious acts and fraud."

52. Based on the above communications, Plaintiff determined continuing to work to resolve without a lawsuit would be futile given Defendant's counsel's threats of retaliation and coercion. 42 U.S.C. §12188.

53. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have Plaintiff's reasonable attorneys' fees, costs, and expenses paid by Defendant pursuant to 42 U.S.C. §12205.

54. Pursuant to 42 U.S.C. §12188, this Court is authorized to enjoin these illegal acts of Defendant.

**WHEREFORE,** premises considered, Plaintiff demands judgment against Defendant on Counts One, Two, and Three and requests the following injunctive and declaratory relief:

1. That the Court declare that the property owned, and business operated by Defendant as well as Defendant's illegal actions described herein violate the ADA, as more particularly described above;

2. That the Court enter an Order enjoining Defendant to alter the facility to make the facility accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. §12182(b)(2)(A)(iv) and implementing regulations, as stated in Count One;

3. That the Court enter an Order directing Defendant to provide Plaintiff full and equal access both to the Piggly Wiggly experience and to the use of the facility, and to further Order Defendant to maintain the required accessible features at the facility so that Plaintiff and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Two;

4. That the Court enter an Order enjoining Defendant from threatening, retaliating, or coercing Plaintiff in the exercise or enjoyment of, or on account of Plaintiff's having exercised or enjoyed, or on account of Plaintiff's counsel having aided Plaintiff in the exercise or enjoyment of any right granted or protected by the Act or 28 C.F.R. §36.206, as stated in Count Three.

5. That the Court award reasonable attorneys' fees, costs, including expert fees, and other expenses of suit to Plaintiff;

6. That the Court award such other, further, and different relief as the Court deems necessary, just, and proper.

Respectfully Submitted, this the 22nd day of March 2019.

/s/ ***L. Landis Sexton***
**L. LANDIS SEXTON**
**BPR # AL-5057N71L**
ADA Group LLC
4001 Carmichael Road
Suite 570
Montgomery, Alabama 36106
Telephone: 334.819.4030
Facsimile: 334.819.4032
Email: LLS@ADA-Firm.com
*Attorney for Plaintiff*

/s/ ***Cassie E. Taylor***
**CASSIE E. TAYLOR**
**AL Bar # 8297-N67R**
ADA Group LLC
4001 Carmichael Road
Suite 570
Montgomery, Alabama 36106
Telephone: 334.356.5314
Facsimile: 334.819.4032
Email: CET@ADA-Firm.com
*Attorney for Plaintiff*

/s/***Tracy G. BirdSong***
   **TRACY G. BIRDSONG**
   **BPR # AL-2170D64T**
   ADA Group LLC
   4001 Carmichael Road
   Suite 570
   Montgomery, Alabama 36106
   Telephone: 334.819.4030
   Facsimile: 334.819.4032
   Email: TGB@ADA-Firm.com
   *Attorney for Plaintiff*

## <u>**CERTIFICATE OF SERVICE**</u>

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this 22nd day of March 2019 to the following:

**Peoples Piggly Wiggly, LLC**
c/o Cody R. Wix
1117 22nd Street South, Suite 202
Birmingham, AL 35205

/s/***L. Landis Sexton***
   **L. LANDIS SEXTON**
   **BPR # AL-5057N71L**
   ADA Group LLC
   4001 Carmichael Road
   Suite 570
   Montgomery, Alabama 36106
   Telephone: 334.819.4030
   Facsimile: 334.819.4032
   Email: LLS@ADA-Firm.com
   *Attorney for Plaintiff*